IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:12cv12 (LMB) |
| | ) | 1:11cr35 (LMB) |
| ANTHONY ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Anthony Roberts has filed a timely Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate"), in which he raises several challenges to his underlying criminal convictions. Because Roberts' claims are either meritless as a matter of law or wholly unsupported by any factual allegations and contradicted by the record, all but one of the issues in this Motion will be summarily dismissed without the need for a response by the Government.[1]

### I. BACKGROUND

Roberts was indicted on January 19, 2011 along with 7 codefendants on charges related to a crack cocaine conspiracy

---

[1] The Court may summarily dismiss a motion under § 2255 if the movant's "allegations, when viewed against the record of the Rule 11 plea hearing, were so palpably incredible, so patently frivolous or false" so as to warrant such action. United States v. White, 366 F.3d 291, 296-97 (4th Cir. 2003) (quoting Blackledge v. Allison, 431 U.S. 63, 76 (4th Cir. 1977)) (original alterations omitted).

operating out of Manassas, Virginia. Roberts was appointed counsel on January 24, 2011[2] and pleaded guilty to two counts of the indictment on February 24, 2011: conspiracy to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841 and 846, and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). On May 13, 2011, the Court sentenced Roberts to the statutory mandatory minimum of 60 months of imprisonment on the drug charge and 60 months consecutive on the firearm charge, with four years of supervised release on each count to run concurrently, and $200 in special assessments. See Dkt. No. 147 (judgment order). In his Motion, Roberts raises numerous issues attacking his convictions, which largely relate to the appropriateness of the Rule 11 colloquy, the voluntariness of his guilty pleas, and the performance of his counsel.

## II. DISCUSSION

### A. Standard of Review

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence

---

[2] Roberts was initially appointed a different attorney who was replaced due to an attorney conflict four days later.

2

or conviction is otherwise subject to collateral attack. To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

Relief under 28 U.S.C. § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result [] in a complete miscarriage of justice." United States v. Addonizio, 422 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

B. Alleged Defects in the Guilty Plea

Roberts first raises numerous complaints concerning how his guilty pleas were taken, none of which are supported by the record. In Ground 1, Roberts claims that the Court accepted his guilty plea "without reading him his 4 Points Miranda Warnings, in violation of the Criminal Procedure Rule No. 11." Motion to

3

Vacate at 5. Rule 11 does not require that a defendant be given a formal Miranda warning; however, the written Plea Agreement and the plea colloquy put Roberts on clear notice of the rights he was giving up by pleading guilty. In particular, the Court advised him that, if he went to trial, he could "choose not to testify, and if you, if you made that decision, that decision could not be any evidence of guilt," which Roberts indicated that he understood. Plea Tr. at 24:1-4. The Plea Agreement also put Roberts on notice of his right to counsel and his trial right "to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses." Plea Agreement ¶ 4 [Dkt. No. 71]. Accordingly, Roberts' Miranda claim will be dismissed with prejudice.

Roberts also alleges that the Court "failed to informed [sic] the petitioner of [sic] nature and consequences of his supervised release term." Motion to Vacate at 5. This allegation is patently contradicted by the record of Roberts' plea colloquy. At the hearing, the Court explicitly laid out the possible duration of Roberts' term of supervised release for each count of conviction. After doing so, the Court asked Roberts if he understood, to which he responded "yes, ma'am." Plea Tr. at 10:14-20, 11:5-9. The Court further explained that, when on supervised release, Roberts would be subject to various

conditions, such as participating in drug treatment, and that violating any of these conditions would expose him to imprisonment for as long as the term of supervised release. Plea Tr. at 12:3-17. Again, Roberts verbally indicated he understood. Id. at 12:16-17. For these reasons, this claim will be dismissed with prejudice.

C. Alleged Defects in the Sentence

In Ground 2, Roberts argues that imposing the § 924(c)(1) sentence consecutive to the sentence of imprisonment for the drug conspiracy violated the Double Jeopardy Clause. That claim is also clearly meritless. It is not a violation of the Double Jeopardy Clause to impose cumulative punishments that are authorized by Congress. Missouri v. Hunter, 459 U.S. 359, 368 (1983); see also United States v. Martin, 523 F.3d 281, 290 (4th Cir. 2008) ("[T]he guarantee against multiple punishments serves simply to ensure that the defendant's sentence is authorized by Congress. If the punishment is authorized by statute, there can be no double jeopardy violation."). In 18 U.S.C. § 924(c), Congress was explicit that sentences under that provision must run consecutively to the sentence for the underlying drug trafficking crime. Id. § 924(c)(1)(D)(ii). Moreover, Roberts cannot make any credible claim that he did not understand that his sentence on the firearm charge would run consecutive to the drug charge because the court explained that result to him in

detail.³ See Plea Tr. at 11:10-12:2 (defendant affirmatively acknowledging his understanding when the Court explained that "if, for example, you were to get the minimum sentence on both counts, the minimum is five years on Count 1 and the minimum is five years on Count 9, but the five years on Count 9 has to be run consecutive to the five years on Count 1. That's a total of ten years," and reiterating that "your two pleas today expose you to a minimum of ten years"). Accordingly, this claim will be dismissed with prejudice.⁴

Roberts also asserts that "his maximum supervised release term has been imposed outside of his maximum guidelines range." Motion to Vacate at 6. By statute, specifically 21 U.S.C.

---

³ Although Roberts had only attended school through the ninth grade at the time of his plea, there is no evidence that he did not understand the plea or sentencing proceedings. At the outset of the plea hearing, he indicated that he could read, write, speak, and understand English. Plea Tr. at 3:15-17. Moreover, Roberts is no stranger to the criminal justice system, having been previously convicted of another drug felony.

⁴ Despite Roberts' acknowledging during the plea colloquy that he understood the consequences of consecutive sentences, in his affidavit filed on January 30, 2012 [Dkt. No. 184], Roberts contends that before sentencing, he asked his attorney "to have the judge run [his] sentence consecutive [sic], but he had chose [sic] not to do so." Roberts Aff. ¶ 2. The Court assumes Roberts intended to write that he requested that his two sentences run concurrently instead of consecutively. He implies that the decision by counsel not to request concurrent sentences was somehow improper. However, because the Court was required by statute to impose the sentence on the gun count consecutive to the sentence on the conspiracy count, any argument to the contrary would have been futile. Accordingly, counsel's failure to raise such an argument did not prejudice Roberts.

6

§ 841(b)(1)(B), a term of supervised release of at least four years must be imposed as part of a sentence for the drug conviction at issue. Because the four years of supervised release is expressly required by the relevant statute, and the four years imposed on the firearms charge was within the five-year limit, this claim will be dismissed with prejudice.

Roberts claims that the Court had no jurisdiction to impose special assessments as part of the sentence. As a matter of law, this claim is meritless, because under 18 U.S.C. § 3013 Congress mandated that the Court impose such assessments, and the Supreme Court has upheld the statute as constitutional. See United States v. Munoz-Flores, 495 U.S. 385 (1990); see also United States Sentencing Guidelines Manual § 5E1.3 (requiring imposition of a special assessment when mandated by statute). For these reasons, this claim will be dismissed with prejudice.

Roberts further argues that the Government failed to prove the charges against him, including the requisite mens rea, and impermissibly relied on his confession. Motion to Vacate at 9. These claims are defeated by Roberts' admissions in the Statement of Facts submitted with his Plea Agreement, in which he admitted that he acted knowingly. Statement of Facts ¶¶ 1-2 [Dkt. No. 72]. He agreed that the facts set forth in the Statement of Facts "establish guilt of the offense charged beyond a reasonable doubt" and admitted under oath during his

plea hearing that he agreed with the contents of the Statement of Facts. Plea Agreement ¶ 3; Plea Tr. at 26:14-16. During the Rule 11 plea colloquy, the Court explained and Roberts acknowledged the nature of the trial rights he forfeited by pleading guilty, and in particular that at trial the Government would have to prove the elements of the crime beyond a reasonable doubt. Plea Tr. at 21:23-22:3. Despite his conclusory claims to the contrary, Roberts has not alleged any plausible facts showing that the Government has "exposed [him] to a miscarriage of justice and a fraud upon the court," Motion to Vacate at 9, or demonstrated that the statements he made during his plea colloquy and acknowledged in the Plea Agreement and Statement of Facts should be set aside. Accordingly, this claim will be dismissed with prejudice.

In Ground 5, Roberts complains that the weight of the cocaine base used for calculating his sentence should not have included the weight of a baking soda and water mixture in addition to the weight of the drug itself. Motion to Vacate at 9. The United States Sentencing Guidelines Manual specifies that, unless otherwise noted, the weight of a controlled substance "refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." United States Sentencing Guidelines Manual § 2D1.1(c) note A; see also 21 U.S.C. § 841(B)(iii); United

States v. Campbell, 354 F. App'x 786, 788 (4th Cir. 2009). Accordingly, this claim regarding the weight of cocaine base will be dismissed with prejudice.

D. Ineffective Assistance of Counsel Claims

To the extent that Roberts attacks his conviction based on ineffective assistance of his trial counsel, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the defendant. Because Roberts pled guilty, he must meet a heightened burden of proving prejudice by showing that counsel's performance was objectively deficient and that, because of the deficient performance, "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); see also United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007). Importantly, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("In the absence of extraordinary circumstances..., allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably

incredible and patently frivolous or false.") (quotations omitted). Roberts acknowledged in his Plea Agreement that he was satisfied that his attorney had "rendered effective assistance," Plea Agreement ¶ 4, and he agreed during the Rule 11 plea colloquy that his attorney answered his questions to his satisfaction and that he was fully satisfied with counsel's representation. Plea Tr. at 7:3-5, 21:9-18.

Roberts' claims that his attorney "failed to challenged [sic] a defective indictment" and the qualifications of the grand jury are meritless. Motion to Vacate at 8. Once again, he points to no specific defect in the indictment that should have been attacked by counsel. As to the grand jury, he makes the preposterous argument that the grand jury violated Fed. R. Crim. P. 43 because he "was not required to be present at the Grand Jury Hearing." Mem. at 3. As the law makes clear, a defendant has no right to participate in grand jury proceedings, Fed. R. Crim. P. 6(d).

In addition, Roberts appears to base part of his ineffective assistance of counsel argument on the contention that counsel failed to raise an entrapment or selective prosecution defense. A successful entrapment defense requires evidence of "(1) government inducement to commit a crime and (2) the lack of predisposition on the part of the defendant to engage in criminal conduct." United States v. You-Tsai Hsu, 364

10

F.3d 192, 198 (4th Cir. 2004). In his petition, Roberts alleges no facts to support either prong of the entrapment inquiry. To the contrary, the allegations he does offer are entirely contradicted by the Statement of Facts, which he signed and verified as accurate. Specifically, Roberts now contends that he gave a confidential informant drugs for the informant's personal use; however, in the Statement of Facts, he acknowledges selling large quantities of drugs to both an informant and an undercover agent in amounts consistent with the purchaser being a distributor. See Statement of Facts ¶¶ 6(a)-(d). These sales occurred over a period of multiple months. Moreover, Roberts admitted that he "maintained his own customer base, and also sold to customers at the direction" of a co-conspirator, and that he helped this co-conspirator obtain cocaine from suppliers and cook it into crack cocaine. Id. ¶¶ 3-4, 6(a)-(f). All of this evidence completely undermines any claim that the Government entrapped Roberts into engaging in drug distribution.

The standard for proving a claim of selective prosecution is "demanding," and "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion," subject

to constitutional limitations. United States v. Armstrong, 517 U.S. 456, 463-64 (1996) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)) (internal quotation marks omitted). Roberts offers no specific allegations to support his claim that the Government improperly selected him as a target for prosecution; to the contrary, he was one of multiple defendants prosecuted in this conspiracy case and was caught on tape undertaking some of the transactions listed in the Statement of Facts. Roberts cannot merely submit a list of defenses he claims his attorney should have pursued, without a plausible factual basis that such defenses had a reasonable possibility of being successful. Accordingly, his claims of ineffective assistance of counsel based on counsel's failure to raise entrapment and selective prosecution defenses will be dismissed with prejudice.

Roberts also alleges that his attorney "coerced and induced" him to plead guilty. See Motion to Vacate at 5; Mem. at 1. In his recently-filed affidavit, Roberts contends that counsel "told me to plead guilty to the Conspiracy charge and gun charge, because I was caught 'red-handed and there was nothing he could do for me." Roberts Aff. ¶ 1. Contrary to Roberts' contention, these statements if true merely demonstrate that counsel offered Roberts frank advice about his chances of prevailing at trial, not that counsel exerted undue pressure to

induce Roberts to plead guilty. Moreover, this claim is directly contradicted by Roberts' acknowledgement during his Rule 11 plea colloquy that he had not been pressured or forced by anyone to plead guilty. See Plea Tr. at 25:23-25 (defendant responding "no ma'am" when asked by the Court whether "anyone put any force or pressure on you to plead guilty today"). Furthermore, Roberts answered affirmatively when asked whether defense counsel "discussed with [him] the nature of these two charges and any ways [he] could possibly defend [him]self against the charges" and whether Roberts was "fully satisfied with the way [defense counsel] has defended" him in the case. Plea Tr. at 21:12-18.

In sum, Roberts' numerous claims regarding the purported ineffectiveness of his counsel do not satisfy the pleading standards set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To plead a plausible claim for relief, Roberts' motion must include facts that support his allegations that the grand jury and/or indictment were defective and should have been challenged by his counsel and that his attorney improperly pressured him to plead guilty. Roberts has also wholly failed to show that, had his attorney acted differently, he would have declined to plead guilty and would have instead proceeded to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). In fact, it appears highly

unlikely that Roberts would have gone to trial, given the provision of the Plea Agreement in which the Government agreed not to file an 851 information. Had the Government filed such an information, Roberts would have faced a doubled mandatory minimum penalty for the drug conspiracy count.

Finally, Roberts contends that his counsel "was constitutionally ineffective, by failure [sic] to file a direct appeal and failed [sic] to protect [Roberts'] rights." Motion to Vacate at 8. Roberts states in his affidavit that, after he was sentenced, he "asked [his] lawyer to file a 'Notice of Appeal' in the bull pin [sic], but he had never filed one." Roberts Aff. ¶ 3.

Although the evidence in this record strongly indicates that it would not have been in Roberts' interest to appeal and that any appeal would have been futile, under Fourth Circuit law, "an attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement." United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007). The record before the Court is incomplete on this issue, because there is no evidence from defense counsel as to whether Roberts did make such a request. For these reasons, the Government will be

ordered to file a response addressing Roberts' contention that counsel did not file an appeal after being asked to do so by his client.[5] The response should include an affidavit from defense counsel.

### III. CONCLUSION

For these reasons, all issues in Roberts' Motion to Vacate will be dismissed with prejudice, with the single exception of Roberts' claim that his attorney improperly failed to file an appeal.

Entered this 10th day of February, 2012.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[5] Certain of Roberts' claims will be dismissed outright because they are entirely devoid of merit. These include that defense counsel "acted as a 'friend to the court' in violation of the petitioner [sic] 6th Amendment Right," that Fed. R. Crim. P. 11 was unconstitutionally enacted by Congress, and that the Court violated the Double Jeopardy Clause and the separation of powers doctrine by delegating the court fine to the Bureau of Prisons. Motion to Vacate at 5, 6, and 8. Accordingly, the above-stated allegations will be dismissed with prejudice.